# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGINALD WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA STATE POLICE | ) | Civil Action No. 05-1541 |
| JEFFERY B. MILLER; PAUL J. | ) | |
| EVANKO; JOHN R. BROWN; DAVID K. | ) | |
| POINTS; JOHN FERRARO; KIRK J. | ) | |
| PATTERSON; and PENNSYLVANIA | ) | |
| STATE TROOPERS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CONTI, District Judge**

### *Introduction*

This case concerns a Pennsylvania State Police trooper, plaintiff Reginald A. Wells ("plaintiff" or "Wells"), who pursuant to 42 U.S.C. § 1983 alleges his First, Fifth, and Fourteenth Amendment rights were violated. Plaintiff sues for damages (count I) and injunctive relief (count II) based upon the alleged constitutional rights violations. Plaintiff additionally brings claims under state law for defamation (count III), invasion of privacy (count IV), failure to represent (count V), and civil conspiracy (count VI).

Pending before this court are two motions for summary judgment, both filed on October 10, 2008. The first was filed on behalf of defendants Pennsylvania State Police, Jeffrey B. Miller ("Miller"), Paul J. Evanko ("Evanko"), John R. Brown ("Brown"), David K. Points ("Points"),

John Ferraro ("Ferraro"), and Kirk J. Patterson ("Patterson," together with Pennsylvania State

Police, Miller, Evanko, Brown, Points, and Ferraro, "commonwealth defendants"). (Doc. No.

66.) The second was filed on behalf of the Pennsylvania State Troopers Association ("PSTA,"

and together with commonwealth defendants, refered to collectively as "defendants"). (Doc. No.

68.) For the reasons that follow, the court will grant the motions for summary judgment with

respect to the federal law claims at counts I and II, and will decline to exercise supplemental

jurisdiction over the remaining state law claims.

## *Background* [1]

---

[1]        This court notes that it requires the parties to comply with Local Rule of Court 56.1 with respect to making a motion for summary judgment and filing a response to the motion. The court set forth this requirement in its August 25, 2008 case management order. (Case Mgmt. Order (Doc. No. 65).)

Local Rule of Court 56.1.B.1 requires the moving party, here defendants, on a motion for summary judgment to submit with it a concise statement of material facts "setting forth the facts essential for the court to decide the motion for summary judgment, which the moving party contends are **undisputed and material** . . . ." Local Rule of Court 56.1.B.1.  The facts are to be listed in separately numbered paragraphs and supported with a specific record reference. *Id.* Thus, for the facts in each paragraph, "[a] party must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." *Id.*

Local Rule of Court 56.1.C.1(a) likewise requires the party opposing summary judgment, here plaintiff, to file a responsive concise statement of material facts that admits or denies whether each statement in the movant's concise statement of material facts is undisputed or not material. Local Rule of Court 56.1.C.1(a). The opposing party is also required to set forth the basis for any denial of a fact in the moving party's concise statement with specific reference to the record as described in Rule 56.1.B.1.  Local Rule of Court 56.1.C.1(b). The opposing party is required to set forth any other material facts allegedly at issue in separately numbered paragraphs of the responsive concise statement of facts. Local Rule of Court 56.1.C.1(c).

Local Rule of Court 56.1.E provides that the consequence of a party's failure to follow these rules, is that facts claimed to be undisputed "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." Local Rule of Court 56.1.E.

Defendants filed concise statements of material facts not in dispute with appropriate record references for each fact asserted. (Doc. Nos. 67, 70.) Plaintiff did not not comply with Local Rule of Court 56.1.C.1(a), and did not comply with this court's case mangement order. Plaintiff filed replies to the motions for summary judgment (Pl.'s Replies to Mots. for Summ. J. (Doc. Nos. 76, 78)) and briefs in support of those replies (Pl.'s Brs. in Supp. of Replies to Mots. for Summ. J. (Doc. Nos. 77, 79)), but failed to file responsive concise statements of material facts. This court will deem admitted all the facts contained in the eighty-six paragraphs of the concise statement of material facts not in dispute submitted by commonwealth defendants (Doc. No. 67), and all facts contained in the twenty-six paragraphs of the concise statement of material facts submitted by the PSTA (Doc. No. 70). Pursuant to Local Rule

At the present time and at all times relevant to this matter, Wells is employed as a trooper by the Pennsylvania State Police. (commonwealth defs.' Concise Statement of Material Facts Not in Dispute ("commonwealth defs. Stat. Facts") ¶ 1 (Doc. No. 67).) Wells was assigned to Troop T and was working out of the Gibsonia station. (*Id.*)  The primary function of Troop T was traffic law enforcement; Troop T's responsibilities included the Pennsylvania Turnpike system. (*Id.* ¶ 3.)

Troop T experienced difficulties in evaluating its troopers' performances because of the nature of the troopers' work. (*Id.* ¶¶ 4, 8.) Troop T calculated station averages of various statistics to aid in the evaluation of troopers and help determine if a trooper was appropriately using his or her time. (*Id.*) If the station average was designed to require troopers to write a certain number of tickets during a fixed period of time, that policy would violate 71 PA. CONS. STAT. § 2001, which makes illegal quota requirements for state police officers. (Second Am. Compl. ¶ 22 (Doc. No. 33).) The average, however, was simply a historical rendering of the number of citations the troopers issued. (commonwealth defs. Stat. Facts ¶ 12) Troopers were not

of Court 56.1.E, because plaintiff did not file responsive concise statements of material facts, defendants' facts are admitted for the purpose of deciding the summary judgment motions.

Defendants filed concise statements of material facts not in dispute with appropriate record references for each fact asserted. (Doc. Nos. 67, 70.) Plaintiff did not not comply with Local Rule of Court 56.1.C.1(a), and did not comply with this court's case mangement order. Plaintiff filed replies to the motions for summary judgment (Pl.'s Replies to Mots. for Summ. J. (Doc. Nos. 76, 78)) and briefs in support of those replies (Pl.'s Brs. in Supp. of Replies to Mots. for Summ. J. (Doc. Nos. 77, 79)), but failed to file responsive concise statements of material facts. This court will deem admitted all the facts contained in the eighty-six paragraphs of the concise statement of material facts not in dispute submitted by commonwealth defendants (Doc. No. 67), and all facts contained in the twenty-six paragraphs of the concise statement of material facts submitted by the PSTA (Doc. No. 70). Pursuant to Local Rule of Court 56.1.E, because plaintiff did not file responsive concise statements of material facts, defendants' facts are admitted for the purpose of deciding the summary judgment motions.

 It should be noted that plaintiff was twice granted extensions of time to respond to the summary judgment motions. Although plaintiff filed responses to the motions for summary judgement (Doc. Nos. 76, 78) and briefs in support of those responses (Doc. Nos. 77, 79), he failed to submit responsive concise statements of material facts.

required to issue a certain number of citations based upon the station average. (*Id*.) Station averages were not kept with the intent to suggest to troopers that they should write more citations or write any particular number of citations, but were used to determine how troopers were using their time and as a guideline in the evaluation of troopers' performances. (*Id*. ¶¶ 13-14.) If troopers continually fell below the guideline, some remedial action might have been taken to ascertain why that trooper was continually below average. (*Id.* ¶ 15.) Determination of the form of the remedial action was completely within the discretion of the station commander. (*Id.* ¶ 35.) Wells believed the station average was an illegal quota system. (*Id.* ¶¶ 51-52.) Wells stated: "When I refer to quota I refer to being disciplined for not reaching the station average." (*Id.* Ex. A at 14.)

Troopers were evaluated annually by their corporal, and this evaluation was reviewed by their sergeant. (*Id*. ¶ 33.) The evaluation consisted of ratings in six categories, and no category was given more weight than another. (*Id*. ¶ 34.) Wells never received an overall rating below satisfactory on any of his evaluations. (*Id*.)

In April 2002, Wells sent two anonymous facsimiles, one to the Pennsylvania Turnpike Commission and the other to the Pennsylvania State Police Office of Chief Counsel, regarding the implementation of the station average. (*Id.* ¶¶ 51-52.) Wells sent at least one of the facsimiles to various news outlets. (PSTA Concise Statement of Material Facts Not in Dispute ("PSTA Stat. Facts") ¶ 5 (Doc. No. 70).) These faxes resulted in an investigation by the Internal Affairs Department of the Pennsylvania State Police ("Internal Affairs Department"), designed to ascertain whether a quota system existed. (commonwealth defs. Stat. Facts ¶ 53.) The Internal Affairs Department interviewed a number of individuals in connection with the investigation,

including Wells; Wells was read his Miranda rights prior to the interview. (*Id*. ¶¶ 58-59.) Wells

voluntarily waived his Miranda rights, and lied during the interview with respect to who sent and

wrote the faxes. (*Id*. ¶¶ 59-66; *Id.* Ex. A at 27, 29-30.) The Internal Affairs Department

investigation determined that Wells lied during the interview and that Wells violated

Pennsylvania State Police regulations. (*Id*. ¶¶ 69.) Wells knew he was not permitted to lie during

an investigation. (*Id*. ¶ 60.) The Internal Affairs Department submitted a disciplinary action

report to Lisa Christi ("Christi"), the Internal Affairs Department disciplinary officer, for her to

determine the appropriate punishment for lying during the investigation. (*Id*. ¶¶ 69-72.) None of

the defendants played a role in the determination. (*Id.* ¶ 72.) Christi determined that the

appropriate penalty was a suspension without pay for twenty days. (*Id*. ¶ 72-73; PSTA Stat. Facts

¶ 12.)  On May 12, 2003, Wells signed an acknowledgment of receipt of the disciplinary action

report. (commonwealth defs. Stat. Facts Ex. W.)

Wells admitted that he gave an inaccurate answer to a question during the interview, but

believed that he was disciplined for revealing the quota system and not for lying during the

interview. (*Id*. Ex. A at 50.) He further believed that the sole purpose of investigation was to

determine who wrote the fax.  (*Id.* at 58.)  He believed this, because he was the only one

disciplined and because:

> I have witnesses and written proof, signed by supervisors, that
> states that certain people were below station average in their
> tickets. And I know for a fact in an interview that one supervisor,
> Corporal Patterson, definitely stated that he had no knowledge of
> ever saying that to anyone. But he has documentation, with his
> signature on it, to various troopers claiming that their citations
> were below station average. And I would say that was a definite lie.

(*Id*.) Despite his belief, plaintiff stated that he has no way of knowing if the people interviewed in the investigation were interviewed for the purpose of finding out who wrote the faxes. (*Id*. at 57.)

Employment actions taken adverse to Wells were motivated solely by a desire to promote the interests of law enforcement and the safety of the public. (*Id*. ¶¶ 38-40.) Wells stated that he did not know whether his 2003 suspension without pay was based upon his disclosures of the use of station average, or whether it was based upon lying during the investigation. (*Id.* Ex. A at 34.) Wells also asserted that it was "more than timing" that has led him to believe his 2003 suspension without pay was imposed in response to his speech against a quota system. (*Id*. at 40.) When asked, "How is it more than timing?" Wells stated:

> The retaliation, as I stated, [corporal Patterson has] initiated four or five against me since [2002]. Only him, he's the only supervisor. Other supervisors have been disciplined because they would not attempt to discipline me for things of  - -  to discipline me on, me being a subpar trooper. And he's the only one.

(*Id*.)

Following his suspension, Wells was allowed to follow the grievance process set forth under the collective bargaining agreement, to which both the PSTA and Pennsylvania State Police were parties and operated under at all times relevant to this suit. (commonwealth defs. Stat. Facts ¶¶ 22, 74-80.) The PSTA is the collective bargaining agency for all Pennsylvania State Police troopers through the rank of major. (*Id.* ¶ 2.)  The PTSA afforded Wells the appropriate grievance process, which included a review by the PTSA's five-member grievance board and efforts by the PTSA to meet with the Pennsylvania State Police to settle the matter. (PTSA Stat. Facts ¶¶ 13, 16.)  The PSTA acted in good faith and succesfully reduced Wells' suspension from twenty days to five days after negotiating with the Pennsylvania State Police. (PTSA Stat. Facts

¶¶ 16-18; commonwealth defs. Stat. Facts ¶¶ 74-80.) When troopers are formally disciplined, they receive a  five-day reduction in seniority; due to the suspension, Wells lost five days of seniority. (commonwealth defs. Stat. Facts Ex. A at 36.)

The collective bargaining agreement did not contain any provisions that guaranteed a trooper any right to work overtime, a preferred shift, or holidays. (*Id.* ¶¶ 23-31.) Wells stated that he did not get overtime after the 2003 suspension, but did not remember the length of time  for which he did not receive overtime. (*Id.* Ex. A at 34-36.) Furthermore, Wells always worked his desired shift, which was the midnight shift. (*Id.* ¶ 28; *Id.* Ex. A at 28-29.) There was no provision in the collective bargaining agreement that entitled troopers to a certain number of weekends off. (*Id.* ¶¶ 30, 32.)

The PSTA reported the allegation of a quota system to the Pennsylvania State Police in accordance with the PSTA's procedure under the collective bargaining agreement, and the PSTA assisted in the investigation as much as possible within the confines of the collective bargaining agreement. (PSTA Stat. Facts ¶¶ 20-23.) The PSTA did not act to determine independently whether an illegal quota system existed, but ensured that the Internal Affairs Department investigated the alleged existence of a quota system. (*Id*. ¶¶ 20, 23.) Wells did not complain of the alleged quota system directly to the PSTA or to the Internal Affairs Department, even though the PSTA instructed him to do so. (*Id*. ¶¶ 20, 22.) Furthermore, the PSTA provided Wells with an attorney at the appropriate times during the investigation, as it was obligated to do under the collective bargaining agreement. (*Id*. ¶¶ 26-27.)

In 2006, Wells filed a report stating that a motorist was "gone on arrival," but the motorist was still present when Wells arrived at the scene and Wells should have included the motorist's

information on the report. (commonwealth defs. Stat. Facts ¶ 42.) Wells was given an

opportunity to correct the error, but failed to do so. (*Id*. ¶¶ 41-46.)  He was suspended for fifteen

days for the misrepresentation on the report. (*Id.* Ex. A at 40-41.) Wells admitted that he did not

properly fill out the report, but believed the fifteen-day suspension was excessive, and, therefore,

filed a grievance. (*Id.* ¶ 46.)

Wells was suspended twice. (*Id*. ¶¶ 47-48.) The first suspension was for the incident in

2002 and the second was for the incident in 2006. (*Id*.) All formally disciplined troopers are not

eligible for promotion for one year; after each of Wells' suspensions, he was not eligible for

promotion for a period of one year. (*Id*.)

Brown was the Deputy Commissioner of Professional Responsibility and in charge of the

Internal Affairs Department. (*Id.* ¶ 86.) Evanko was the Colonel and Commissioner of the

Pennsylvania State Police from 1995 through March 2003; he retired from the Pennsylvania State

Police in March 2003. (*Id.* ¶ 85.) Miller succeeded Evanko in that position after March 2003.

(Second Am. Compl. ¶¶ 3-4.) Wells alleges that Brown, Miller, and Evanko, in their supervisory

roles, failed to stop the discriminatory actions against him, and for that reason they were involved

in the conspiracy to deprive him of his rights. (Second Am. Compl. ¶¶ 26-29.) These three

individuals, however, were not involved in the actions taken against Wells beyond their general

supervisory roles, and there was no indication that they had actual knowledge of the incidents or

directed any Pennsylvania State Police employees to carry out adverse actions against Wells.

(commonwealth defs. Stat. Facts ¶¶84-86.)

On November 7, 2005, plaintiff filed the initial complaint in this action. (Compl. (Doc.

No. 1).) On March 16, 2006, Wells filed an amended complaint. (Am. Compl. (Doc. No. 14).) In

the amended complaint, Wells alleges that defendants violated his rights under the First, Fifth,

and Fourteenth Amendments of the United States Constitution. (*Id.*) Wells brought these claims

pursuant to 42 U.S.C. § 1983 (count I) and 42 U.S.C. § 1985 (count II). (*Id.*) Plaintiff also

brought various state law claims against defendants, including claims for violation of the

Pennsylvania Whistleblower Law, 43 PA. CONS. STAT. §§ 1421-27, defamation, invasion of

privacy, failure to represent, and civil conspiracy. (*Id.*) The commonwealth defendants and the

PSTA respectively filed motions to dismiss (Doc. Nos. 25, 16), which the court on August 10,

2006 granted in part (Doc. No. 32). On September 25, 2006, plaintiff filed his second amended

complaint. (Doc. No. 33.) On October 10, 2008, both the commonwealth defendants and the

PSTA filed motions for summary judgment. (Doc. No. 66, 68.)


### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if,

drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P.

56(c).

The nonmoving party must point to specific affirmative evidence in the record, rather

than rely upon conclusory or vague allegations or statements. *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986). Concrete evidence must be provided for each element of each of the claims,

and the evidence must be such that a reasonable fact-finder could find in that party's favor at

trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A nonmoving party, like

plaintiff, must 'designate specific facts showing that there is a genuine issue for trial.'" *Orenge v. Veneman*, No. 04-297, 2006 WL 2711651, at *6 (W.D. Pa. Sept. 20, 2006) (*citing Celotex*, 477 U.S. at 324).

A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson*, 477 U.S. at 248.  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment.  *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *Pollack v. City of Newark*, 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

### *Discussion*

In moving for summary judgment, the commonwealth defendants argue:  (1) they are not persons under 42 U.S.C. § 1983 in their official capacities; (2) some defendants were not personally involved in the claims; (3) the applicable statute of limitations passed barring claims against one of the commonwealth defendants; (4) the commonwealth defendants are entitled to Eleventh Amendment immunity; and (5) the commonwealth defendants are entitled to qualified immunity. In moving for summary judgment, the PSTA asserts that the association is not a state actor under 42 U.S.C. § 1983. The court does not find the need to address every argument raised;

the court will address several arguments with respect to the 42 U.S.C. § 1983 claims, which

warrant the granting of summary judgment in defendants' favor with respect to the federal claims

asserted. The court finds that (1) commonwealth defendants are not persons suable under 42

U.S.C. § 1983 in their official capacities, (2) the PSTA did not act under color of state law, (3)

Miller, Evanko, and Brown lacked personal involvement, and (4) Wells failed to adduce

sufficient evidence to establish a violation of his Constitutional rights. For those reasons,

summary judgment will be granted in favor of defendants with respect to the federal claims

asserted in counts I and II. Since the court grants summary judgment with respect to the federal

law claims, the court declines to exercise subject-matter jurisdiction over the remaining state law

claims.

**A.     Count I Seeking Monetary Damages for Violations of First, Fifth, and Fourteenth Amendment Rights under 42 U.S.C. § 1983**

Pursuant to 42 U.S.C. § 1983 ("§ 1983"), Wells claims Miller, Evanko, Brown, Points,

Ferraro, Patterson, and the PSTA deprived him of his First Amendment right to free speech, Fifth

Amendment right to due process, and Fourteenth Amendment rights to due process and equal

protection. Section 1983 reads in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 imposes civil liability upon any person who, while acting under

color of state law, deprives another individual of rights, privileges, and immunities secured by

the Constitution or federal law. *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001). Section 1983

"does not create any new substantive rights, but it provides a remedy for the violation of a federal

constitutional or statutory right conferred elsewhere." *Id.* (*citing Baker v. McCollan*, 443 U.S.

137, 144 n. 3 (1979)).  To prevail on a claim brought pursuant to § 1983, a plaintiff must show

that (1) the defendants acted under color of law, and (2) the defendants' actions deprived the

plaintiff of rights secured by the Constitution or federal statutes. *Anderson v. Davila*, 125 F.3d

148, 159 (3d Cir. 1997) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)).

"Retaliation for the exercise of constitutionally-protected rights is itself a violation of rights

secured by the Constitution actionable under section 1983."  *White v. Napoleon*, 897 F.2d 103,

111-12 (3d Cir. 1990).

### 1.    The commonwealth defendants are not susceptible to suit in their official capacities under § 1983

Wells brought count I against the Pennsylvania State Police, Miller, Evanko, Brown,

Points, Ferraro, and Patterson.  The commonwealth defendants argue that the Pennsylvania State

Police is an agency of the Commonwealth of Pennsylvania and is not a "person" that can be

subject to civil rights liability; the commonweath defendants also argue that the individual

defendants are officials of the Commonwealth of Pennsylvania, and, for similar reasons, cannot

be subject to civil rights liability in their official capacities.

It is well established that, in any forum, "neither a State nor its officials acting in their

official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

71 (1989); *see Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 201 (1991) ("a State is not a

'person' as that term is used in § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained").

The court finds that Pennsylvania State Police is not a person that can be sued under §1983, and count I of plaintiffs' complaint alleging civil rights violations against Pennsylvania State Police must be dismissed. *See Wivell v. Pa. State Police*, No. 4:CV-07-1194, 2007 WL 3033962, at *2 (M.D. Pa. Oct. 16, 2007). Likewise, the court finds that Miller, Evanko, Brown, Points, Ferraro, and Patterson are not suable in their official capacities. Count I of plaintiff's complaint alleging Miller, Evanko, Brown, Points, Ferraro, and Patterson violated plaintiff's civil rights will also be dismissed, to the extent the claims are based on those defendants' actions in their official capacities. The claims asserted at count I against Miller, Evanko, Brown, Points, Ferraro, and Patterson in their individual capacities are not defeated because of immunity.

### 2.     PSTA did not act under color of state law

To prevail on a claim brought pursuant to § 1983, a plaintiff must first show that the defendants acted under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). The PSTA is not a state or a state agency, but rather is a private entity.

In certain circumstances, a private entity can act under color of state law. *Id.* According to the United States Supreme Court: "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). The state action requirement ensures that seemingly private behavior is not treated as that of the state itself unless "it can be said that the state is *responsible* for the specific conduct of

-13-

which the plaintiff complains." *Crissman v. Dover Downs Entm't Inc.*, 289 F.3d at 239 (3d Cir.

2002) (citing *Brentwood Acad.*, 531 U.S. at 295).  The determination whether a private party

defendant is a state actor is "necessarily [a] fact-bound inquiry." *Brentwood Acad.*, 531 U.S. at

298; *see Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) ("[o]nly by sifting facts

and weighing circumstances can the nonobvious involvement of the State in private conduct be

attributed its true significance."); *Crissman*, 289 F.3d at 233-34 ("[a]lthough little is

straightforward in determining whether a private actor has acted 'under color of state law,' one

directive emerges from the Supreme Court's jurisprudence: the facts are crucial.").

In *Brentwood Academy*, the Supreme Court identified several different factual approaches

to aid in determining whether conduct is "fairly attributable" to government action.  Id. at 296.[2]

The United States Court of Appeals for the Third Circuit suggests that these factual approaches

are not tests that are different in operation, but rather "different ways of characterizing the

necessarily fact-bound inquiry that confronts the Court in [each] situation." *Crissman*, 289 F.3d

at 239 n.12 (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 939 (1982)). The Court of Appeals

for the Third Circuit has characterized the approaches in two broadly-defined categories:

> the first category involves an activity that is significantly
> encouraged by the state or in which the state acts as a joint

---

[2]  Specifically, the Supreme Court stated the following in *Brentwood Academy*:

> Our cases have identified a host of facts that can bear on the fairness of such an attribution. We
> have, for example, held that a challenged activity may be state action when it results from the
> State's exercise of "coercive power," when the State provides "significant encouragement, either
> overt or covert," or when a private actor operates as a "willful participant in joint activity with the
> State or its agents[.]"  We have treated a nominally private entity as a state actor when it is
> controlled by an "agency of the State," when it has been delegated a public function by the State,
> when it is "entwined with governmental policies," or when government is "entwined in [its]
> management or control[.]"

*Brentwood Acad.*, 531 U.S. at 296 (citations omitted).

> participant. . . . The second category of cases involves an actor that
> is controlled by the state, performs a function delegated by the
> state, or is entwined with government policies or management.

*Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005). Whatever the characterization, what is important is that the facts relating to defendant's challenged conduct must bear a "very significant relationship to the state." *Crissman*, 289 F.3d at 240.

Wells alleged that, for the purposes of his § 1983 claims, the PSTA can be treated as a state actor because the commonwealth defendants and the PSTA acted jointly in pusuit of a common enterprise to violate his constitutional rights. Wells argues the PSTA acted in concert with the commonwealth defendants, because of the "PSTA's knowledge of the existence of an illegal and unlawful 'quota system' for the issuance of traffic citations by Troopers existing in Troop 'T' of the Pennsylvania State Police," and the PTSA's failure "to correct, stop, and/or insure that the egregious misconduct complained of herein did not occur." (Pl.'s Br. in Supp. of Reply to PTSA's Mot. for Summ. J. at 12 (Doc. No. 79).)

Based upon the record before the court, a reasonable finder of fact could not conclude that a sufficiently close nexus exists between the Commonwealth of Pennsylvania and the PSTA's challenged action. In order to prove a civil conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993). Here, there is no evidence of any agreement or conspiracy between the PTSA and the commonwealth defendants. *See Ogborne v. Brown*, No. CIV A 97-4374, 1999 WL 820869, at *6 (E.D. Pa. Oct. 13, 1999) (finding there was insufficient evidence to find a private individual acted under color of state law, because there was no evidence of an agreement or conspiracy).

Summary judgment must be granted with respect to the § 1983 claims against the PSTA, because no reasonable jury could find that the PSTA acted under color of state law. The court will continue to address the merits of the § 1983 claims with respect to the PSTA despite reaching the conclusion that PSTA must be granted summary judgment on this ground.

### 3.      Defendants Miller, Evanko, and Brown were not personally involved

To prevail on a claim brought pursuant to § 1983, a plaintiff must show that the actions of the defendants deprived the plaintiff of rights secured by the Constitution or federal statutes. *Davila*, 125 F.3d at 159. Under § 1983, a plaintiff must establish that the defendant violated federal law and also that the defendant violated a right, privilege, or immunity enjoyed by the plaintiff under that federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Here Wells alleged a deprivation of his constitutional rights by Miller, Evanko, and Brown, based upon their general supervisory roles over the Pennsylvania State Police and the Internal Affairs Department.

A plaintiff asserting civil rights violations under § 1983 against an individual defendant must establish that the individual had "personal involvement in the alleged wrongdoing." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694-95 (1978).  For a supervisor to have personal involvement in the deprivation of constitutional rights, a plaintiff must show the supervisor gave "'personal direction'" or had "'actual knowledge and acquiescence'" of the offending incidents. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207 (3d Cir. 1988)). Liability cannot be based upon respondeat superior in § 1983 actions. *Id*. There must be specific facts that indicate deliberate indifference to a violation, and causation to the resulting injury. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).

-16-

Wells argues that Miller, Evanko, and Brown had "knowledge of the existence of an illegal and unlawful 'quota system,'" and that they failed to "take any action to insure that individuals imposing such a 'quota system' were to stop and properly disciplined" and failed to "establish policies, procedures and protocols to insure that such 'quota systems' would not be used." (Pl.'s Br. in Supp. of Reply to commonwealth defs.'s Mot. for Summ. J. at 14 (Doc. No. 77).)   The imposition of an illegal quota system, however, is not a violation of Wells' constitutional rights. Even if Miller, Brown, and Evanko knew and acquiesced to the alleged quota system, and even if they failed to establish polices and procedures to eliminate the alleged quota system,  these actions do not amount to personal involvement in the deprivation of any of Wells' consitutionally-protected rights.

In this case, the evidence fails to show that the Miller, Evanko, or Brown  were personally involved in the incidents that form the basis of Wells' constitutional claims. Conclusory statements in the complaint and briefing regarding their actual knowledge and involvement in the deprivation of Wells' constitutional rights are not supported by any facts of record showing that these individuals gave personal direction or had actual knowledge and acquiesced to any of the offending incidents raised in Wells' complaint. There are also no facts showing a particular practice that these defendants failed to employ that might have avoided injury to Wells. Miller, Evanko, and Brown must be granted summary judgment on this basis. The court will continue to address the merits of the § 1983 claims with respect to Brown, Miller, and Evanko, despite reaching the conclusion that they must be granted summary judgment on this ground.

4.     **Defendants did not Violate a Right Secured by the Constitution or Laws of the United States**

a.     **First Amendment retaliation claim**

The First Amendment provides:

> Congress shall make no law respecting an establishment of
> religion, or prohibiting the free exercise thereof; or abridging the
> freedom of speech, or of the press; or the right of the people
> peaceably to assemble, and to petition the government for a redress
> of grievances.

U.S. CONST. amend. I. The First Amendment right to free speech is incorporated into the

Fourteenth Amendment Due Process Clause, and for that reason is applicable to the states. *See*

*Miller v. Clinton County*, 544 F.3d 542, 545 n.1 (3d Cir. 2008). Although plaintiff does not

allege he was deprived of his right to speak directly, "[r]etaliation for the exercise of

constitutionally-protected rights is itself a violation of rights secured by the Constitution

actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). "A public

employer engages in unconstitutional retaliation 'when it makes decisions, which relate to

promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment

rights.'" *Meenan v. Harrison*, 264 F. App'x 146, 152 (3d Cir. 2008) (*quoting Brennan v. Norton*,

350 F.3d 399, 419 (3d Cir. 2003)).

In order to establish retaliation in violation of the First Amendment pursuant to § 1983, a

plaintiff must prove that (1) he was engaged in constitutionally protected speech, (2) he was

treated adversely by a state actor, and (3) the protected speech was a substantial or motivating

factor in causing the retaliation. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir.

2004); *Davila*, 125 F.3d at 161. The question whether the speech is protected is one of law, while

the remaining questions are questions of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

Normally a court would initally address the protection of the speech as it is clearly a question of law. The court will consider the causation element, however, because plaintiff's failure to establish that element is clear. Even if Wells can prove that his speech was protected and that he was treated adversely, he cannot prove that his protected speech caused the adverse treatment.[3]

Wells was treated adversely when he was twice suspended for violations of police regulations. Wells relies upon the timing of the suspensions as evidence that the cause of these adverse employment actions was his speech. In April 2002, Wells sent the facsimiles alleging an illegal quota system. Wells argues that sometime thereafter an internal investigation was commenced, although he does not specify a date.  In June 2003, Wells was informed that he would receive a twenty-day suspension. Wells was also suspended in 2006. Wells believed the suspensions, as well as other adverse employment actions that occurred during the relevant time period, including the denial of overtime, a five-day loss of seniority, and a two-year inability to apply for promotion, were retalitatory acts in response to his speech.

The Court of Appeals for the Third Circuit has held that the causation element for establishing a retaliation claim under § 1983 is subject to the same standard and analysis as is applied to a Title VII retaliation claim. *Brennan v. Norton*, 350 F.3d 399, 421 (3d Cir. 2003).

---

[3] Defendants do not concede that Wells' speech was protected. It might not be protected, as plaintiff is a public employee. Public employees must prove that they spoke as citizens. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Public employees do not speak as citizens when making statements pursuant to their official duties. Here, Wells had a duty to report any violations of law or regulations to his supervisors. *Id*.; (commonwealth defs. Stat. Facts ¶ 83.) The court, however, does not reach the issue.

Two main factors are relevant to this analysis: (1) timing and/or (2) evidence of ongoing antagonism. *Abramson v. William Patterson Coll.*, 260 F.3d 265, 288 ("Temporal proximity . . . is sufficient to establish the causal link.  [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent [adverse employment action] if the employer engaged in a pattern of antagonism in the intervening period.").

In the first prong, there must be a close temporal proximity between the protected activity and the adverse employment action. *Id.*  While the court of appeals has not enumerated a stringent formula for what is considered to be too long of a gap between the protected activity and adverse action, the courts have held that a time span of several months is too great. *See Williams v. Phila. Hous. Auth.*, 380 F.3d 751, 760 (3d Cir. 2004) (two months too long to permit an inference of causation); *George v. Genuine Parts Co.*, No. 04-108, 2007 U.S. Dist. LEXIS 5373, at **34-35 (W.D. Pa. Jan. 25, 2007) (holding that although suggestiveness is highly sensitive to the facts of each case, a three-month gap "is not so close as to be unusually suggestive of retaliatory motive, especially where an obvious and unimpeached non-retaliatory motive exists").

The United States Court of Appeals for the Third Circuit has been somewhat ambivalent with respect to whether timing alone is sufficient to satisfy the causation prong of the prima facie case. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997) ("Temporal proximity is sufficient to establish the causal link."); *Jalil v. Avdel Corp.*, 873 F.2d at 708 (causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC claim); *but cf. Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (causation prong not established on timing alone where nineteen months passed following

protected activity and adverse employment action: "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."); *Quiroga v. Hasbro, Inc.*, 934 F.3d 497 (3d Cir. 1991) (affirming lower court's determination that the timing of the plaintiff's discharge alone did not raise an inference of retaliation). Timing, however, in connection with other types of suggestive evidence, is clearly sufficient to demonstrate the causal link. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). For example, the court of appeals held that timing combined with evidence of vague or inconsistent reasons given by an employer for an employee's termination was sufficient to satisfy the causation prong of the prima facie case. *Abramson*, 260 F.3d at 289 ("Here, as we found in our discussion of the discrimination claim, [plaintiff] has succeeded in both casting doubt on the reasons [her employer] proffered for her termination, and in demonstrating that those reasons were vague and inconsistent."); *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 73 (3d Cir. 1986); *see EEOC v. L.B. Foster Co.*, 123 F.3d 746, 753-54 (3d Cir. 1997), *cert. denied*, 522 U.S. 1147 (1998).

In this case, Wells did not direct the court to any exact dates upon which the adverse employment actions were taken, making it difficult to evaluate the evidence of causation based upon timing. When temporal proximity alone is not clearly suggestive of discriminatory animus, other evidence of retaliatory motivation must be shown. *Williams*, 380 F.3d at 760.  Such evidence may manifest itself as, although is not limited to, an intervening "pattern of antagonism." *Woodson*, 109 F.3d at 920-21 (3d Cir. 1997); *see Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993). "It is important to emphasize that it is causation, not temporal proximity itself, that is

an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar*, 109 F.3d at 178.  "The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Id.*

In the instant matter, the court cannot ignore that defendants' stated motives for the adverse employment actions were based upon plaintiff's violations of regulations; the violations stemmed from plaintiff's misrepresentations in 2002 and 2006.  Although plaintiff argues these reasons were not the true determining factors in the decisions, plaintiff offers no evidence to the contrary; Wells admitted the misrepresentations.  Wells does not present any evidence that these adverse employment actions were unusual for his violations of the regulations, and he offers no evidence demonstrating inequality in enforcement of the regulations. Absent a showing that other employees were not disciplined for similar violations, the required nexus between Wells speech and the suspensions against him cannot be established. The uncontradicted evidence of record also reflects the loss of seniority and the temporary inability to apply for promotions were directly and solely a result of the suspensions.

With respect to overtime, Wells does not offer any evidence that others were not denied overtime due to infractions of police regulations. *See San Filippo v. Bongiovanni*, 30 F.3d 424, 444 (3d Cir. 1994) (holding causation was established when evidence of temporal proximity was presented with testimony that others did not recieve comparable punishment for similar infractions). Wells was always able to work his preferred shift, and he presented no evidence of other adverse scheduling actions. There is no evidence that the PSTA acted inappropriately, as Wells presented no evidence of other troopers being treated differently by the association. Based

upon the evidence before this court, no reasonable jury could find in plaintiff's favor. Defendants'

motions for summary judgment must be granted with respect to plaintiff's claims raised under

the First Amendment.

>    **b.    Fifth Amendment claim**

The Fifth Amendment reads:

> No person shall be held to answer for a capital, or otherwise
> infamous crime, unless on a presentment or indictment of a grand
> jury, except in cases arising in the land or naval forces, or in the
> militia, when in actual service in time of war or public danger; nor
> shall any person be subject for the same offense to be twice put in
> jeopardy of life or limb; nor shall be compelled in any criminal
> case to be a witness against himself, nor be deprived of life, liberty,
> or property, without due process of law; nor shall private property
> be taken for public use, without just compensation.

U.S. CONST. amend. V. The right to due process guaranteed by the Fifth Amendment is not

applicable to the states and are not incorporated through the Fourteenth Amendment; such a

claim can be brought directly under the Fourteenth Amendment. *Shoemaker v. City of Lock*

*Haven*, 906 F. Supp. 230, 238 (M.D. Pa. 1995). The Fifth Amendment Due Process Clause only

protects against acts by the federal government. *See Bartkus v. Illinois*, 359 U.S. 121, 124 (1950);

*Shoemaker*, 906 F. Supp. at 237-38; *Shepherdson v. Nigro*, 5 F. Supp.2d 305, 307-08 n.2 (E.D.

Pa. 1998); *see also Ferguson v. Pennsylvania,* No. 05-280E, 2009 WL 723426, at *5 (W.D. Pa.

Mar. 13, 2009).

Wells asserts that his Fifth Amendment due process rights were violated by defendants.

(Second Am. Compl. ¶¶ 51-52). Wells asserts no claims against the federal government,

however, and consequently Wells' claims under the Fifth Amendment fail as a matter of law.

>    **c.    Fourteenth Amendment equal protection claim**

The Fourteenth Amendment provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV § 1.

Wells alleges an equal protection claim under the Fourteenth Amendment. This claim relies on the last portion of  section one of the amendment, known as the Equal Protection Clause, which reads "no . . . state shall deny any person within its jurisdiction the equal protection of the laws." *Id.*  Under the Equal Protection Clause, all persons are not entitled to be treated identically; rather the concept of equal protection stands for the principle that "all persons *similarly situated* should be treated alike." *Artway v. Attorney General of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Shoemaker*, 906 F. Supp. at 238 (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)); *see Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Protected classes include those based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights. *Artway*, 81 F.3d at 1267.  "[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose." *Central State Univ. v. Am. Ass' n of Univ. Professors*,

-24-

526 U.S. 124, 127-28 (1999) (quoting *Heller v. Doe*, 509 U.S. 312, 319-21 (1993)).

Under the Equal Protection Clause, a state cannot discriminate on the basis of a fundamental right. *See Central State Univ.*, 526 U.S. at 127-28; *see also Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547-48 (1983). Freedom of speech is a fundamental right upon which a state cannot discriminate. *Regan*, 461 U.S. at 547. If the court has established that a plaintiff's freedom of speech right was not violated, however, the court need not go through the equal protection analysis, because the substantive First Amendment claim is a stronger guarantee of freedom of speech. *See Hill v. City of Scranton*, 411 F.3d 118, 126 (3d Cir. 2005) (holding there was no need to analyze an equal protection claim when a direct First Amendment claim was already analyzed, because the First Amendment guarantee is the stronger of the two). The court has already concluded that no reasonable jury could render a verdict in favor of plaintiff with respect to his First Amendment claim.

Although plaintiff did not set forth sufficient evidence to prevail on his equal protection claim based upon the First Amendment, plaintiff also argues his equal protection rights were violated based upon a right to employment. Unless the person discriminated against is a member of a suspect classification, or a certain fundamental right is implicated by the discrimination, the court must review the claim under the rational basis test. *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 99 n.11 (3d Cir. 2009). Under the rational basis test, the discrimination is permissible if it bears a rational relation to a legitimate state goal. *Romer*, 517 U.S. 631. A "challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for classification.'" *Donatelli v. Mitchell*, 2 F.3d 508, 513 (3d Cir. 1993) (quoting *FCC v. Beach Commc'ns, Inc.*,

508 U.S. 307, 315 (1993)).

Wells acknowledges that his asserted right to employment is an important right, but not a fundamental right, guaranteeing him the freedom to engage in a particular occupation or business. Wells asserts that this equal protection claim is reviewed appropriately under the rational basis test. The court agrees and will review his right to employment equal protection claim under the rational basis test.

All evidence indicates that the employment actions against Wells were taken because he lied during the 2002 investigation and he lied in the 2006 report. The Pennsylvania State Police and the Commonwealth of Pennsylvania have a legitimate interest in encouraging candor and truthfulness in reports and investigations in order to protect citizens from false claims, to carry out effectively investigations and to promote the goals of law enforcement and safety. *See Price v. Cohen*, 715 F.2d 87, 95 (3d Cir. 1983) (holding that it was rational to believe that dividing assistance recipients into transitionally needy and "chronically needy" was related to legitimate interests, despite the legislature's reliance on meager evidence). The adverse employment actions in this case were rationally related to protecting Pennsylvania's legitimate interest. Defendants must be granted summary judgment for Wells' claims under the Equal Protection Clause.

To the extent that plaintiff attempts to maintain a class-of-one equal protection claim based upon the important right to engage in an occupation, that claim must be dismissed. Class-of-one claims are not recognized in the public employment context. *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2155 (2008); *Skrutski v. Marut*, 288 F. App'x 803, 809 (3d Cir. 2008). "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the

employer-employee relationship." *Engquist*, 128 S. Ct. at 2155; *Strothers v. Nassan*, No. 08-1624, 2009 WL 976604, *5 (W.D. Pa. Apr. 9, 2009). The Supreme Court has determined it would be improper to allow class-of-one actions by plaintiffs claiming they were treated differently than others, because different treatment is an inherent part of discretionary actions. *Engquist*, 128 S. Ct. at 2155. Any claims that the plaintiff makes regarding overtime and shift preferences are barred because these actions were completely discretionary employment decisions. Wells cannot avail himself of the class-of-one theory under the Equal Protection Clause.

### d.    Fourteenth Amendment procedural due process

Procedural due process arises from the Due Process Clause of the Fourteenth Amendment, which reads: "nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. To establish a claim under the Fourteenth Amendment Due Process Clause, a plaintiff must assert that he was deprived of a property or liberty interest without due process of law. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). A Fourteenth Amendment procedural due process claim is analyzed in two parts: (1) whether a property or liberty interest is encompassed within the Fourteenth Amendment, and (2) whether the plaintiff was provided with due process of law through the procedures available to him. *Alvin*, 227 F.3d at 116 (citing *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984)).

With respect to the second element, when an adequate grievance process is followed by a union and public employer, the plaintiff is afforded due process under the Fourteenth Amendment. *See Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995) (holding

plaintiff received due process under the Fourteenth Amendment when an adequate grievance process was in place and followed).

To the extent plaintiff believes the grievance process was defective, his claim is only viable under state law for breach of duty of fair representation, and not under § 1983. *Dykes*, 68 F.3d at 1571-73 (holding if a public employee believes the grievance procedure was defective, he may seek relief under state law, and not under § 1983). Also, when a union declines to take an public employee's claim to arbitration under a collective bargaining agreement, the employee is not deprived of due process under the law, if there is no evidence that the public employer interfered with the union's decision. *See Hughes v. City of Bethlehem*, 294 F. App'x 701, 705 (3d Cir. 2008). Even when the employer holds a hearing preliminary to the request for arbitration, and that hearing is "inherently biased," the right of the employee to request his or her union proceed to arbitration provides the employee with an adequate due process safeguard. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (citing *Dykes*, 68 F.3d at 1571).

Wells' claim fails the second part of the two-part analysis. Even if he can prove that one of his asserted interests is protected by the Fourteenth Amendment procedural due process right,[4] plaintiff offered no evidence to support his assertion that he was not afforded adequate process. The PSTA provided Wells with an attorney when he requested one and when he was entitled to one. The PSTA and the Pennsylvania State Police allowed Wells to follow the grievance process

---

[4] With respect to the first prong, plaintiff's two suspensions without pay are sufficient deprivations of property interests. The adverse actions claimed with respect to scheduling and overtime were never grieved by Wells and do not suffice to constitute property interests. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006) (holding that complaining of adverse employment action short of job loss does not suffice to assert a sufficient property interest under the Procedural Due Process Clause). Plaintiff might have suffered a deprivation of a liberty interest. The Court of Appeals for the Third Circuit requires job loss in addition to defamation to reputation in order to establish a sufficient liberty interest. *Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006). The court does not need to reach this issue, because plaintiff did not adduce sufficient evidence to raise a genuine issue of a material fact with respect to the second prong.

as agreed to under the collective bargaining agreement, after both suspension rulings by the Internal Affairs Department. To the extent that Wells claims the grievance process was biased and defective, there is no evidence that the Pennsylvania State Police was involved in making any decisions and his remedy against defective grievance procedures is more properly addressed in the state court system. No reasonable jury could render a verdict in favor of plaintiff with respect to this claim. Summary judgment must be granted in defendants favor with respect to Wells' procedural due process claims.

### e.    Fourteenth Amendment substantive due process

The Fourteenth Amendment Due Process Clause, although it only explicitly mentions state procedures, also has a substantive component.  *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 138-39 (3d Cir. 2000). Substantive due process protects rights "which are so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Zellner v. Monroe County Mun. Waste Mgmt. Auth.*, No. 3:07-CV-1976, 2008 WL 2962595, at *6 (M.D. Pa. July 28, 2008) (quoting *Seale v. Ridge*, Civ. A. No. 96-5522, 1998 WL 792165, at *2 (E.D. Pa. Nov.13, 1998)).

Wells' substantive due process claim is based upon retaliation in response to his alleged protected speech. This claim is more properly raised directly under the First Amendment. *Nicholas*, 227 F.3d at 143 n.3 (holding First Amendment retaliation claims are governed by the text of the Constitution explicitly and may not be brought as a substantive due process claim). Plaintiff does not assert a deprivation of any other fundamental interest under his substantive due process claim.

-29-

Wells claims that he was deprived of a property interest in his employment which is constitutionally protected, although Wells does not specifically raise this in the context of substantive due process. (Pl.'s Br. in Supp. of Reply to commonwealth defs.' Mot. for Summ. J. at 12.) The Court of Appeals for the Third Circuit has recognized two separate "threads" of substantive due process analysis. *Nicholas*, 227 F.3d at 139-41. The first thread concerns substantive due process claims against legislative action; legislative action involves laws or board regulations that apply to large parts of society. *Id.* at 139. Legislative action is not implicated in this case.

The second thread of substantive due process analysis involves claims of discriminatory, nonlegislative action. *Nicholas*, 227 F.3d at 139-41. This case implicates the second thread, because employment actions are nonlegislative acts. *Id.* To establish a Fourteenth Amendment substantive due process claim for nonlegislative action, the plaintiff must prove deprivation of a fundamental property interest protected under the Fourteenth Amendment. *Id.* at 139-40 (citing *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). The primary protection of a property interest is a procedural due process claim. *Nicholas*, 227 F.3d at 139. A deprivation that is legal under procedural due process may violate the substantive component of the Due Process Clause if the deprivation was deliberate and arbitrary. *Id.*

"[I]n a due process challenge to [nonlegislative] action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). The purpose of this threshold question is to prevent a digression into a generalized and all encompassing constitutional tort law. *Id.* Negligent conduct is below the threshold to qualify

-30-

as a constitutional due process violation. *Id.* at 849. Whether reckless conduct rises above the threshold for constitutional due process action is a close call; acting with deliberate indifference in some cases might meet the required threshold. *Id.* at 850.

Plaintiff failed to adduce evidence of any action that is shocking to the conscience. Plaintiff alleged willful and malicious conduct on behalf of defendants (Second Am. Compl. ¶ 53), but failed to present any evidence to support these claims. The evidence of record demonstrates that defendants did not take unwarranted action against plaintiff. Summary judgment must be granted for any substantivedue process claims under the Fourteenth Amendment.

**B.     Count II Seeking Injunctive Relief for Violation of First, Fifth, and Fourteenth Amendment Rights under 42 U.S.C. § 1983**

In count II, Wells brought claims against Miller, Evanko, Brown, Points, Ferraro, and Patterson, in their official capacities, requesting injunctive relief. States and state officials cannot be sued in federal courts based upon the doctrine of sovereign immunity under the Eleventh Amendment. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). There are three exceptions, however, to the sovereign immunity doctrine: (1) Congressional abrogation, (2) waiver by the state, or (3) when sued for injunctive or declaratory relief. *Id.* The third exception, which is the only exception applicable to this situation, is based upon the concept that a suit to stop the enforcement of state law in conflict with the Constitution is a suit against the individual officer and not a suit against the state. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Wells' count II claim only seeks injunctive relief and is properly brought under the third exception enumerated and explained above.

-31-

Although it survives Eleventh Amendment scrutiny, a similar analysis to that applied to count I applies to count II. With respect to count II: plaintiff did not adduce sufficient evidence to show Miller, Evanko, and Brown had personal involvement, and plaintiff did not set forth sufficient evidence to survive summary judgment with respect to his claims of constitutional violations. Based upon that analysis, summary judgment must be granted with respect to count II.

## C.   Supplemental State Law Claims (Counts III-IV)

Wells asserts several state law claims: defamation and invasion of privacy against all defendants except the PSTA, failure to represent against the Pennsylvania State Police and the PSTA, and civil conspiracy against all defendants (Second Am. Compl. ¶¶ 61-89). Plaintiff alleges this court has subject-matter jurisdiction over the claims under 28 U.S.C. § 1367(c)(3). Jurisdiction pursuant to this statute is known as supplemental jurisdiction. *Peter Bay Homeowners Ass'n v. Stillman*, 294 F.3d 524, 533 (3d Cir. 2002) ("Known as 'supplemental jurisdiction,' § 1367 has permitted federal courts to exercise subject matter jurisdiction over matters they would normally be precluded from entertaining").

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995). This court declines to exercise supplementary jurisdiction over the state court

claims in this action. The state law claims will be dismissed without prejudice to the plaintiff's

right to file the state law claims in state court.

### *Conclusion*

After reviewing the undisputed material facts of record, viewing all disputed facts in the

light favorable to the nonmoving party, and drawing all reasonable inferences in favor of the

nonmoving party, the court concludes that the motions for summary judgment filed by

defendants will be GRANTED with respect to plaintiff's claims for violations of the First, Fifth,

and Fourteenth Amendments under 42 U.S.C. § 1983 (counts I and II). The court declines to

exercise  supplemental jurisdiction over plaintiff's claims arising under Pennsylvania law (counts

III-VI), and those claims are dismissed, without prejudice.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Date: September 11, 2009